IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2012 Session

## ANTHONY D. CHILDS, ET AL. v. UT MEDICAL GROUP, INC., ET AL.

### Direct Appeal from the Circuit Court for Shelby County
No. CT-004644-10     James F. Russell, Judge

### No. W2011-01901-COA-R3-CV - Filed August 8, 2012

Plaintiffs filed a voluntary notice of nonsuit in this medical malpractice action in July 2009. They refiled their claim in September 2010. The trial court dismissed Plaintiffs' claim for failure to comply with Tennessee Code Annotated § 29-26-121 Plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Duncan E. Ragsdale, Memphis, Tennessee, for the appellant, Anthony D. Childs and KaSandra Brook Childs.

Albert C. Harvey and Elizabeth T. Collins, Memphis, Tennessee, for the appellees, UT Medical Group, Inc. and Robert S. Egerman, M.D.

Jerry E. Mitchell and Andrea N. Malkin, Memphis, Tennessee, for the appellee, Bill C. Mabie, M.D.

### OPINION

This appeal arises from a medical malpractice action originally filed in 1999. The facts relevant to our disposition of this matter are not disputed. On August 18, 1999, Plaintiffs Anthony D. Childs (Mr. Childs) and KaSandra Brook Childs (KaSandra; (collectively, "Plaintiffs") filed a medical malpractice action against the Shelby County Health Care Corporation d/b/a the Regional Medical Center, UT Medical Group, Inc., and eight individual Defendants in the Circuit Court for Shelby County. In their complaint, they alleged that Defendants' professional negligence proximately caused the death of Kimberly

Childs, Mr. Childs' wife and KaSandra's mother, who died following childbirth. On July 27, 2009, Plaintiffs gave notice of voluntary nonsuit without prejudice as to all Defendants. The trial court entered an order of nonsuit on September 20, 2009, and an amended order of voluntary nonsuit on September 24, 2009.

On September 20, 2010, Plaintiffs refiled their action against UT Medical Group, Inc. ("UT"), William C. Mabie ("Dr. Mabie"), and Robert S. Egerman ("Dr. Egerman"; collectively, "Defendants"). In their complaint, Plaintiffs asserted that notice had been given to Defendants pursuant to Tennessee Code Annotated § 29-26-121(a), and that notice was attached as Exhibit A. They also asserted compliance with the Certificate of Good Faith requirement prescribed by Tennessee Code Annotated § 29-26-122, and stated that the Certificate of Good Faith was attached as Exhibit B. On September 27, 2010, Plaintiffs filed their first amended complaint, incorporating their original complaint and adding an additional count.

Dr. Mabie and Dr. Egerman answered, denying that Plaintiffs had complied with Tennessee Code Annotated §§ 29-26-121 and 29-26-122 and denying allegations of negligence. UT filed a response denying that Plaintiffs had properly complied with the statutory requirements of Tennessee Code Annotated §§ 29-26-121 and 29-26-122. In its response, UT denied allegations of negligence and additionally asserted the defenses of the statute of limitations and the statute of repose.

On April 28, 2011, Defendants filed a joint motion to dismiss for failure to comply with Tennessee Code Annotated §§ 29-26-121 and 29-26-122. Defendants also asserted in their motion that the matter was barred by the applicable statute of limitation. In the memorandum of law incorporated by reference into Defendants' motion, Defendants asserted that Plaintiffs had failed to comply with the mandatory requirements of section 29-26-121 where Plaintiffs had failed to include the date of birth of the patient; the name and address of the claimant authorizing the notice and the relationship to the patient; or a HIPAA compliant medical authorization. Defendants also asserted Plaintiffs had failed to comply with the requirements of section 29-26-122 where the Certificate of Good Faith did not disclose the number of prior violations of the section.

Plaintiffs filed a response to Defendants' motion to dismiss on June 1, 2011. In their response, Plaintiffs asserted that the notice requirement of section 29-26-121 should be excused for "extraordinary cause." Plaintiffs relied on *Howell v. Claiborne and Hughes Health Center*, No. M2009-01683-COA-R3-CV, 2010 WL 2539651 (Tenn. Ct. App. June 24, 2010), for the proposition that extraordinary cause existed justifying excuse from the statutory requirements where the original complaint was filed in 1999; the action was nonsuited after July 1, 2009, when the statutory amendments became effective; and the action

was refiled approximately one year later. Plaintiffs asserted that Defendants clearly had notice of Plaintiffs' claims more than 60 days prior to the refiling of the matter in September 2010. They further asserted that they had demonstrated that the claim had merit by filing the Certificate of Good Faith. Plaintiffs asserted that Defendants' argument that they had failed to comply with section 29-26-122 was "without logic" where, although the statute requires disclosure of past violations of the section, in the present case no prior violations existed.

On June 6, 2011, Plaintiffs filed a memorandum in support of their June 1 response. In their memorandum, Plaintiffs asserted that they sent the requisite notice letters on June 26, 2009, before the amended section became effective. Plaintiffs asserted that they complied with the statutory section as it then existed where, prior to July 1, 2009, the statute did not require a HIPPA compliant medical authorization. Plaintiffs further asserted that, if the court determined that the statute as amended effective July 1, 2009, applied to this matter, the case should not be dismissed where the purpose behind the notice requirement had been accomplished. Plaintiffs again asserted that extraordinary cause justified noncompliance with the statute. On June 24, 2011, Plaintiffs filed an Amended Certificate of Good Faith stating that Plaintiffs had violated Tennessee Code Annotated § 29-26-122 "0" times.

Following a hearing on August 5, 2011, the trial court granted Defendants' motion and dismissed the matter by order entered August 16, 2011. The trial court attached and incorporated its August 5 ruling to its written order. Plaintiff filed a notice of appeal on September 1 and an appeal bond on September 15, 2011.

### *Issues Presented*

Plaintiffs present the following issues for our review:

(1)     Did the trial court err in granting Defendants' joint motion to dismiss, for failure to comply with Tennessee Code Annotated § 29-26-121, when the notice letters sent on June 26, 2009, adhered to the technical requirements according to the plain meaning of the notice statute, as amended on October 1, 2008, and thereby fulfilling (sic) the policy reasons behind enactment of the notice statute?

(2)     Did the trial court apply the incorrect standard by finding that Plaintiffs were not excused from compliance for "extraordinary cause" shown, when precedent has excused compliance with the notice statute in situations where the statute went into effect before a non-suited case was refiled, as Defendants had actual notice by litigation of the first suit?

(3)    Did the trial court abuse its discretion in granting Defendants' motion to dismiss, based on a theory of equitable estoppel, when Plaintiffs complied with the plain language of the statute and Defendants failed to present a prima facie case of equitable estoppel and argued in bad faith that they were "confused" by the notice letters sent on June 26, 2009?

## *Discussion*

We begin our discussion of the issue presented by noting that the trial court did not dismiss this matter based on a theory of equitable estoppel, as asserted by Plaintiffs in their third issue. The trial court observed that the "so-called notices" were sent to Defendants during the course of the litigation commenced in 1999 ("Childs I"), when the litigation had been on-going for "quite some time." The trial court determined that the June 2009 notice letters were "meaningless" where they were sent to Defendants in the course of the original action and before Plaintiffs' July 27, 2009, notice of nonsuit and the trial court's September 2009 order thereon. The trial court did not base its judgment on a theory of equitable estoppel, but on a determination that the June 2009 notices were ineffective to give Defendants notice of the current lawsuit where they were sent during the litigation of Childs I. The trial court stated:

The Court reasons that if the decision or decisions that prompted the voluntary nonsuit in the first place during the earlier litigation process had come out differently, the nonsuit probably would not have been taken and the case would have been litigated to its conclusion which would have rendered these notice that had been sent earlier completely meaningless. . . . Logic then would dictate that if they were meaningless under that scenario, then they must be meaningless under any other scenario.

However, notwithstanding its determination that the June 2009 notices were "meaningless" to Defendants, the trial court also found that Plaintiffs did not comply with the mandatory requirements as Tennessee Code Annotated § 29-26-121 as amended effective July 1, 2009. The statute provides:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for medical malpractice shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon medical malpractice in any court of this state.
(2) The notice shall include:

-4-

(A) The full name and date of birth of the patient whose treatment is at issue;

(B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

(C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

(3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs, as established by the specified proof of service, which shall be filed with the complaint:

(A) Personal delivery of the notice to the health care provider or an identified individual whose job function includes receptionist for deliveries to the provider or for arrival of the provider's patients at the provider's current practice location. Delivery must be established by an affidavit stating that the notice was personally delivered and the identity of the individual to whom the notice was delivered; or

(B) Mailing of the notice:

(i) To an individual health care provider at both the address listed for the provider on the Tennessee department of health web site and the provider's current business address, if different from the address maintained by the Tennessee department of health; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified manner to the provider's office or business address at the location where the provider last provided a medical service to the patient; or

(ii) To a health care provider that is a corporation or other business entity at both the address for the agent for service of process, and the provider's current business address, if different from that of the agent for service of process; provided, that, if the mailings are returned undelivered from both addresses, then, within five (5) business days after receipt of the second undelivered letter, the notice shall be mailed in the specified

manner to the provider's office or business address at the location where the provider last provided a medical service to the patient.

(4) Compliance with the provisions of subdivision (a)(3)(B) shall be demonstrated by filing a certificate of mailing from the United States postal service stamped with the date of mailing and an affidavit of the party mailing the notice establishing that the specified notice was timely mailed by certified mail, return receipt requested. A copy of the notice sent shall be attached to the affidavit. It is not necessary that the addressee of the notice sign or return the return receipt card that accompanies a letter sent by certified mail for service to be effective.

(b) If a complaint is filed in any court alleging a claim for medical malpractice, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(c) When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider. Personal service is effective on the date of that service. Service by mail is effective on the first day that service by mail is made in compliance with subdivision (a)(2)(B). In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action asserting a claim for medical malpractice, nor shall more than one (1) extension be applicable to any provider. Once a complaint is filed alleging a claim for medical malpractice, the notice provisions of this section shall not apply to any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault.

(d)(1) All parties in an action covered by this section shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice. A party shall provide a copy of the specified portions of the claimant's medical records as of the date of the receipt of a legally authorized written request for the records within thirty (30) days thereafter. The claimant complies with this requirement by providing the providers with the authorized HIPAA compliant medical authorization required to accompany the notice. The provider may comply with this section by:

(A) Mailing a copy of the requested portions of the

records with a statement for the cost of duplication of the records to the individual requesting the records;

(B) Informing the individual requesting the records that the records will be mailed only upon advance payment for the records for the stated cost of the records, calculated as provided in § 63-2-102. Any request for advance payment must be made in writing twenty (20) days after the receipt of the request for medical records. The provider must send the records within three (3) business days after receipt of payment for the records; or

(C) Fulfilling such other method that the provider and the individual requesting the records agree to in writing.

(2) The records received by the parties shall be treated as confidential, to be used only by the parties, their counsel, and their consultants.

(e) In the event that a complaint is filed in good faith reliance on the extension of the statute of limitations or repose granted by this section and it is later determined that the claim is not a medical malpractice claim, the extension of the statute of limitations and repose granted by this section is still available to the plaintiff.

Tenn. Code Ann. § 29-26-121(Supp. 2011).

The trial court found that, assuming a plaintiff may give notice of the potential re-filing of a medical malpractice claim before nonsuiting the original action, Plaintiffs' June 2009 correspondence to Defendants did not constitute compliant notice under section 29-26-121 as it existed in September 2010, when the current lawsuit was filed. The trial court determined that the correspondence undisputedly failed to provide the patient's date of birth as required by subsection (a)(2)(A); failed to contain the address of the claimants or indicate the relationship of the claimants to the patient as required by subsection (a)(2)(B); and failed to include a medical authorization release that is compliant with HIPPA as required by subsection (a)(2)(E), or even to reference a release. The trial court further stated that more than one year had passed from the date the correspondence was sent in June 2009, while Childs I was pending, and the time the matter was refiled in September 2010. The trial court stated that it "simply [could] not find that so-called extraordinary cause" existed under the circumstances.

The initial question that arises in this case is whether Plaintiffs' June 2009 correspondence to Defendants constituted "notice" for the purposes of section 29-26-121, where the correspondence was generated during the pendency of Childs I, and Plaintiffs subsequently nonsuited their action. Plaintiffs' rely on Chapter 425, Section 4, of the Public

Acts of 2010 for the proposition that, because their correspondence was sent to Defendants before July 1, 2009, the 2009 amendments are not applicable to Plaintiffs' 2010 action. The section provides, in pertinent part:

> Section 1 of this act shall take effect and apply to notice given on or after July 1, 2009, in all medical malpractice actions, the public welfare requiring it.

2010 Tenn. Pub. Acts Ch. 425, § 4. Plaintiffs assert that their June 2009 correspondence was "notice" that was sent prior to July 1, 2009.

It is well-settled that when construing an act of the legislature, the courts must seek to give effect to the intent and purpose of the General Assembly. *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)(citations omitted). We begin with the words chosen by the General Assembly, construing them according to their natural and ordinary meaning in light of the overall context and purpose of the statute. *Id.* Where the statutory language is unambiguous, the court may ascertain the legislative intent from the words employed by the legislature. Where the words are ambiguous, or where conflicting provisions in a statute create ambiguity, we must "endeavor to give effect to the entire statute by harmonizing the conflicting provisions[.]" *Id.* at 527 (citations omitted). We presume the General Assembly is aware of the state of the law when it enacts a statute, including "the manner in which the courts have construed the statutes it has enacted." *Id.* (citations omitted). "The courts' goal is to construe a statute in a way that avoids conflict and facilitates the harmonious operation of the law." *Id.* (citations omitted).

Tennessee Code Annotated § 29-26-121 as it appears in the 2009, 2010 and 2011 supplements to the Code does not contain section 4 of the Public Act within the body of the statute itself. Rather, the provision is noted in the "Compiler's Notes" to the section. Additionally, both the Public Act and the enacted statute found in the Code are ambiguous with respect to the circumstances present in this case, where Plaintiffs' alleged "notice" was sent to Defendants during the pendency of on-going litigation and before a voluntary nonsuit was taken.

We have observed that, upon entry of an order of dismissal pursuant to Tennessee Rule of Civil Procedure 41.01, "the case is, for all intents and purposes, over." *Barnett v. Elite Sports Medicine*, No. M2010-00619-COA-R3-CV, 2010 WL 5289669, at *2 (Tenn. Ct. App. Dec. 17, 2010). We noted in *Barnett* that, "[i]f the action is refiled, it proceeds as a new action, subject only to the provisions of Tenn. R. Civ. P. 41.04 relating to the payment of costs attributable to the prior action." *Id.*; see also Tenn. Code Ann. § 28-1-105. Accordingly, when the trial court entered the order dismissing Plaintiffs' original action in September 2009, that case was "over." Correspondence generated in the course of the

dismissed action did not constitute notice of a potential subsequent action.

The doctrine of prior suit pending is instructive on this issue. The doctrine of prior suit pending "is derived from the ancient common-law rule prescribing that a person 'shall not be . . . twice vexed for one and the same cause.'" *West v. Vought Aircraft Industries, Inc.*, 256 S.W.3d 618, 622 (Tenn. 2008)(quoting *Sparry's Case*, (1591) 77 Eng. Rep. 148, 148 (Exch.); accord *Ex parte State Mut. Ins. Co.*, 715 So.2d 207, 213 (Ala.1997)). Under the rule as it evolved under common-law, "a party could have an action barred on procedural grounds if there was a prior suit pending against him in the same jurisdiction for the same cause of action." *Id.* (citing 1 William M. McKinney, *The Encyclopædia of Pleading and Practice: Under the Codes and Practice Acts, at Common Law, in Equity and in Criminal Cases* 750–51 (Northport, Edward Thompson Co. 1895); *Sparry's Case*, 77 Eng. Rep. at 148)). The philosophical underpinnings of the rule has been summarized as:

> The law abhors multiplicity of actions; and therefore whenever it appears on record, that the plaintiff had sued out two writs against the same defendant for the same thing, the second writ shall abate; for if it were allowed that a man should be twice arrested, or twice attached by his goods for the same thing, by the same reason he might suffer *in infinitum*; . . . if there was a writ in being at the time of suing out the second, it is plain the second was vexatious, and ill *ab initio*.

*Id.* at 622-623 (quoting 1 Matthew Bacon, *A New Abridgement of the Law* 22 (7th ed. London, Strahan 1832)).

Under this "fixture of American common law[,]" an action will be dismissed when another suit is pending on the same subject mater. *Id.* (citation omitted). The defense of prior suit pending contains four elements: "1) the lawsuits must involve identical subject matter; 2) the lawsuits must be between the same parties; 3) the former lawsuit must be pending in a court having subject matter jurisdiction over the dispute; and 4) the former lawsuit must be pending in a court having personal jurisdiction over the parties." *Id.* (citations omitted). A lawsuit becomes "pending" upon the filing of the complaint. *Id.* at 624.

Section 29-26-121of the Tennessee Code requires notice of a potential medical malpractice action before the action becomes "pending." However, it follows that, for the purposes of section 29-26-121, effective notice cannot be given of a potential, subsequent, re-filed action while the original action is pending. The legislative intent of Section 4 of Chapter 425 of the Public Acts of 2010, as we perceive it, was to allow reasonable flexibility to plaintiffs who provided notice of a potential claim prior to July 1, 2009, but who could not

reasonably comply with the 2009 amendments and file their complaint within the time permitted by the statute of limitations or savings statute. In the current case, as the trial court observed, Plaintiffs did not nonsuit their original action until after the July 1, 2009, amendments to section 29-26-121 became effective. They had ample time to comply with the mandates of the amended section before re-commencing their action in September 2010.

As the trial court observed, Plaintiffs' June 2009 correspondence was "meaningless" to Defendants where it was sent during the pendency of the first action. The June 2009 correspondence did not provide notice of a potential claim where, when it was sent to Defendants, Plaintiffs did not have a "potential claim," but were actively litigating the original lawsuit. Plaintiffs' June 2009 correspondence became part of the record of the original lawsuit filed in 1999. That action "was over" in September 2009. Plaintiffs were required to provide notice of their potential "new" 2010 action at least 60 days prior to the re-filing of their complaint.

We turn next to whether the trial court abused its discretion by refusing to excuse Plaintiffs' from compliance with section 29-26-121 as amended effective July 1, 2009, for extraordinary cause as permitted by Tennessee Code Annotated § 29-26-121(b). When reviewing a trial court's discretionary decision, we will uphold the ruling "so long as reasonable minds can disagree as to propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). An abuse of discretion occurs when the trial court "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, the appellate court may not substitute its judgment for the judgment of the trial court. *Id*. (citing *Myint v. Allstate Ins. Co*., 970 S.W.2d 920, 927 (Tenn. 1998)).

The trial court's discretion however, does not free it from its "responsibility to exercise reason and judgment." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009)(citations omitted). We have recognized that a trial court's discretionary decisions ""are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles."" *Id*. (quoting *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008)(quoting *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). "A discretionary decision will not stand if the trial court fails to apply the relevant statutory, legal, or procedural framework intended to guide its determination." *Id*. (citing *id*.).

Plaintiffs assert that this matter is factually identical to *Howell v. Claiborne and Hughes Health Center,* No. M2009-01683-COA-R3-CV, 2010 WL 2539651(Tenn. Ct. App.

June 24, 2010), a case in which we determined that the trial court had erred by refusing to excuse compliance with the former version of section 29-26-121, as amended effective October 1, 2008. Plaintiffs assert that, as in *Howell*, the present action was nonsuited and re-filed pursuant to the savings statute after the amendments to section 29-26-121 became effective. Plaintiffs assert that, like the defendants in *Howell*, Defendants in the present case had notice of the claims against them by virtue of the first action. Plaintiffs also assert that plaintiffs in *Howell* gave no notice before recommencing their action, whereas Plaintiffs here gave notice in June 2009. Plaintiffs assert that the underlying notice provisions of the statute accordingly have been satisfied, and strict compliance with the "technical" requirements of the statute should be excused.

It is undisputed that Plaintiffs' June 2009 correspondence did not satisfy the statutory requirements in effect in September 2010. Assuming, *arguendo*, that Plaintiffs' June 2009 correspondence to Defendants constituted non-complaint notice, we turn to whether the trial court erred in determining that no extraordinary cause existed to excuse compliance in this case. Upon review of the record, we concur with the determination of the trial court. In light of our disposition of this issue, the question of whether a plaintiff in a medical malpractice action may satisfy section 29-26-121 for the purpose of notifying the defendant of a potential re-filed action by sending the requisite information to defendants during the pendency of the first action must wait for another day.

As noted above, Plaintiffs contend that this matter is so procedurally similar to *Howell* that the trial court's discretionary judgment must be set aside in this case. We disagree. In *Howell*, the plaintiff filed his first complaint in July 2007; the trial court entered an order of voluntary nonsuit on November 28, 2007; and plaintiff refiled the action on October 6, 2008. *Howell*, 2010 WL 2539651, at *1. We emphasized in *Howell* that Tennessee Code Annotated 29-26-121, as it then existed, became effective on October 1, 2008, "mere days" prior to the refiling of the action. *Id.* at *16.

The unique circumstances present in *Howell* do not exist in this case. As the trial court stated, in this case, Plaintiffs filed their nonsuit in July 2009, after ten years of litigation; the order on the nonsuit was entered in September 2009; and Plaintiffs re-commenced their action in September 2010. Thus, section 29-26-121, as amended effective July 1, 2009, governed medical malpractice actions before Childs I was nonsuited, and more than one year before the present action was filed. The trial court found that there was "no reason at all why proper notice consistent with the statute as it had been modified could not have been given before the refiling took place[.]" The trial court stated, "given the length of time . . . June 26th of 2009 and the refiling of the lawsuit on September 20 of 2010, more than one year later, the Court simply cannot find that so-called extraordinary cause" existed.

"Extraordinary cause" is not defined by the statute, but left to the sound judgment of the trial court. In this case, Plaintiffs neither allege facts nor forward any reason to excuse compliance with section 29-26-121. The unique circumstances found in *Howell* are not present here. Like the plaintiff in *Myers*, Plaintiffs have demonstrated no "cause" that would excuse them from the mandatory statutory requirements, much less extraordinary cause. *See Myers v. AMISUB (SFH), Inc., d/b/a St. Francis Hospital, et al.,* No. W2010-00837-COA-R9-CV, 2011 WL 664753 (Tenn. Ct. App. Feb. 24, 2011)(*perm. app. granted* Aug. 23, 2011). Plaintiffs' arguments, as we perceive them, are: 1) that compliance with each element of the statute, including the HIPPA compliant authorization mandated by subsection (a)(2)(E), is not mandatory if some form of notice is given; and 2) that notice is not necessary when an action is recommenced under the savings statute because the original action is sufficient notice of a claim. The plain language of the statute, however, does not support these assertions. *See id*. at *8. We find no abuse of discretion on the part of trial court in this case.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. This matter is remanded to the trial court for dismissal of the action and the collection of costs. Costs of this appeal are taxed to the Appellants, Anthony D. Childs and KaSandra Childs, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE