IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 5, 2013 Session

## SAMUEL E. FOSTER ET AL. V. WALTER WILLIAM CHILES, III ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-227-12      Dale C. Workman, Judge**

---

**No. E2012-01780-COA-R3-CV-FILED-JUNE 27, 2013**

---

This is a health care liability[1] case.  Samuel E. Foster and his wife, Mary Foster, timely filed a complaint after properly sending pre-suit notices to the potential defendants as required by Tenn. Code Ann. § 29-26-121(a) (2012).  After nonsuiting their first lawsuit, they timely filed a second complaint in which they alleged the same cause of action against the same defendants.  The second complaint alleged compliance with section 121(a), citing the notices already properly sent before the first complaint was filed.  The trial court dismissed the second complaint with prejudice based upon the court's determination that plaintiffs failed to satisfy the notice requirement of section 121(a).  We hold that plaintiffs complied with section 121(a)'s notice requirement by giving a written notice of their potential health care liability claim to each defendant at least 60 days prior to the filing of their second complaint. We further hold that section 121 does not mandate dismissal with prejudice for noncompliance with its terms, and that plaintiffs' inadvertent failure to file – with the second complaint – proof of their service of the subject notices does not warrant dismissal with prejudice.  We vacate the trial court's order of dismissal and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

John D. Agee and Bradley D. Williams, Clinton, Tennessee, for the appellants, Samuel E. Foster and Mary Foster.

---

[1] We refer to "health care liability" – formerly known as a medical malpractice – because the General Assembly passed legislation, effective April 23, 2012, replacing the term "medical malpractice" with "health care liability" in every place that the former label had appeared in the Code.  *See* Act of April 23, 2012, ch. 798, 2012 Tenn. Pub. Acts.  The complaint at issue here was filed May 4, 2012.

F. Michael Fitzpatrick and Rachel Park Hurt, Knoxville, Tennessee, for the appellees, Covenant Health and Parkwest Medical Center.

Stephen C. Daves, Knoxville, Tennessee, for the appellees, Walter William Chiles, III, M.D. and Knoxville Urology Clinic, P.C.

Edward G. White, II, and B. Chase Kibler, Knoxville, Tennessee, for the appellees, Gordon Lee Collins, M.D. and Anesthesia Medical Alliance of East Tennessee, P.C.

**OPINION**

I.

Plaintiffs filed their first lawsuit on March 17, 2011. They alleged that the acts or omissions of the defendants, Dr. Walter William Chiles, III, Knoxville Urology Clinic, P.C., Dr. Gordon Lee Collins, Anesthesia Medical Alliance of East Tennessee, P.C., Covenant Health, and Parkwest Medical Center, deviated from the applicable standards of medical care causing them injury. At an earlier time – on November 18, 2010 – plaintiffs had mailed the notice required by Tenn. Code Ann. § 29-26-121(a) to each of the defendants. Section 121(a) addresses its notice requirement as follows:

> (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.
>
> (2) The notice shall include:
>
> (A) The full name and date of birth of the patient whose treatment is at issue;
>
> (B) The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;
>
> (C) The name and address of the attorney sending the notice, if applicable;

(D) A list of the name and address of all providers being sent a notice; and

(E) A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

On May 6, 2011, plaintiffs took a voluntary nonsuit of their initial lawsuit. On May 4, 2012, plaintiffs, relying on the saving statute,[2] re-filed the same cause of action against the same defendants. The parties seem to agree that plaintiffs' first and second complaints are essentially identical.[3] The second complaint asserted that "[p]laintiffs have complied with the notice requirements set forth in T.C.A. § 29-26-121(a), and copies of the required notices and appurtenant documentation, as attested to by the [a]ffidavit of Brandy K. Brogdon, are attached hereto." (Underlining in original.) The notices and Ms. Brogdon's affidavit, however, were not, in fact, attached to the second complaint. Regarding Tenn. Code Ann. § 29-26-122(a)'s requirement that, in a health care liability action, "the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint," it is undisputed that plaintiffs complied with this statute by filing a certificate of good faith with both the first and second complaints.

Defendants filed motions to dismiss based upon alleged noncompliance with section 121(a). The trial court granted the motion on July 20, 2012, stating in its order of dismissal:

> Based upon the record in this cause and the arguments of all counsel present, the Court finds that Defendants' Motions are well-taken and are granted. The Court concludes as a matter of law that the language of Section 121, which is plain and unambiguous, requires a plaintiff, when re-filing a medical

---

[2]Tenn. Code Ann. § 28-1-105(a) (2000), provides, in pertinent part, as follows:

> If the action is commenced within the time limited by a rule or statute of limitation, but the judgment or decree is rendered against the plaintiff upon any ground not concluding the plaintiff's right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested, or reversed on appeal, the plaintiff, . . . may, from time to time, commence a new action within one (1) year after the reversal or arrest.

[3] A copy of the first complaint is not in the appellate record. Plaintiffs state in their brief that their "original and re-filed complaints were essentially identical" and the defendants have not taken issue with this statement.

malpractice cause of action after a voluntary non-suit without prejudice and during the saving[] period established pursuant to the Saving[] Statute . . . to comply separately (*i.e.*, by disregarding the plaintiff's prior compliance with the notice requirement of Section 121 with respect to the filing of the plaintiff's initial complaint) by re-sending notices in conformity with Section 121 to each health care provider who will be named as a defendant in the re-filed action at least sixty (60) days before re-filing the complaint. As a matter of law, this Court holds that, notwithstanding the notices duly given by the Plaintiffs under Section 121 in connection with the filing of their original complaint, the Plaintiffs failed to comply with the mandatory notice requirements set forth in Section 121 insofar as Plaintiffs re-filed their Complaint pursuant to the Saving[] Statute without first causing, during the saving[] period and at least sixty (60) days prior to such re-filing, new notices to be sent in conformity with Section 121 to each prospective Defendant, and the Plaintiffs failed to demonstrate extraordinary cause to excuse compliance with those mandatory notice requirements.

The trial court dismissed plaintiffs' second complaint with prejudice. Plaintiffs timely filed a notice of appeal.

## II.

The overriding question in this case is simply this: did plaintiffs fail to comply with section 121 prior to the filing of their second lawsuit? In addition to addressing this question, we are also required to determine whether section 121 requires the sanction of dismissal with prejudice for noncompliance. We answer both questions in the negative.

## III.

Because the trial court's grant of the defendants' motions to dismiss involves a question of law, our review is de novo with no presumption of correctness as to the trial court's legal conclusions. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012). Similarly, "[t]he construction of a statute is also a question of law which we review de novo without any presumption of correctness." *Id.* at 308. There are no disputed material issues of fact on this appeal.

-4-

IV.

A.

The issues presented require statutory construction. In *Myers*, the Supreme Court was called upon to construe the notice requirement at issue here. It did so pursuant to the following applicable and well-established principles of statutory construction:

> Our review requires us to determine the meaning of Tennessee Code Annotated sections 29-26-121 and 122. The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (*citing Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn. 2005)).

*Myers*, 382 S.W.3d at 308.

The High Court in *Myers* held that "the statutory requirements that a plaintiff give sixty days pre-suit notice and file a certificate of good faith with the complaint are mandatory requirements and not subject to substantial compliance." *Id.* at 304. Defendants argue that *Myers* requires affirmance of the trial court's dismissal of plaintiffs' second complaint. Plaintiffs do not take issue with *Myers*, but argue that it is factually distinguishable. We agree with plaintiffs.

*Myers* involves a first lawsuit filed *before* section 121 was enacted, followed by a "saving statute" re-filing of a second lawsuit *after* the notice and good faith certificate

requirements of sections 121 and 122 had been enacted and were effective. *Id.* The plaintiff in *Myers* never provided the defendants with pre-suit notice, but argued that he had substantially complied with section 121 "because the defendants had notice of the re-filed cause of action from the proceedings in the original suit and that the certificate of good faith requirement of Tennessee Code Annotated section 29-26-122 was satisfied by expert disclosures filed in the original suit." *Id.* at 306. The Supreme Court disagreed and further held that Mr. Myers had failed to demonstrate "extraordinary cause" excusing his noncompliance with sections 121 and 122. *Id.* at 310-11.

In the present case, plaintiffs do not argue that they *substantially* complied with the statute, nor that they demonstrated extraordinary cause to excuse noncompliance; but, rather, that they *fully* complied with the statute. Plaintiffs assert in their brief that "[b]ecause Section 121 requires only that notice must be given 'at least sixty (60) days before filing a complaint,' a notice, once duly served, arguably relates, on a reasonable interpretation of Section 121, equally to an initial complaint and a subsequent complaint filed under the [saving] statute." In this case, it is not disputed that the notice mailed to defendants more than sixty days before the filing of Plaintiffs' first complaint complied with the statutory requirements of Section 121.[4] This significant fact distinguishes the present case from *Myers* and other appellate decisions affirming the dismissal of a health care liability action for noncompliance. *See* **Bullock v. Univ. Health Sys., Inc.**, No. E2012-00074-COA-R3-CV, 2012 WL 5907495 at *1 (Tenn. Ct. App. E.S., filed Nov. 27, 2012); **Childs v. UT Med. Grp., Inc.**, No. W2011-01901-COA-R3-CV, 2012 WL 3201933 at *9 (Tenn. Ct. App. W.S., filed Aug. 8, 2012); **Cude v. Herren**, No. W2010-01425-COA-R3-CV, 2011 WL 4436128 at *1 (Tenn. Ct. App. W.S., filed Sept. 26, 2011); **DePue v. Schroeder**, No. E2010-00504-COA-R9-CV, 2011 WL 538865 at *1 (Tenn. Ct. App. E.S., filed Feb. 15, 2011) (reversing trial court's decision not to dismiss and remanding for dismissal).

We now examine the language of section 121 to determine if plaintiffs complied with the notice requirement. As noted, section 121(a)(1) simply requires that "[a]ny person . . . asserting a potential claim for health care liability *shall give written notice* of the potential

---

[4] On appeal, defendants argue, for the first time, that the information contained in the notices was technically deficient. For instance, defendants assert that the notices did not provide the "full name" of the patient whose treatment is at issue or the name and address of the claimant authorizing the notice. Defendants acknowledged receiving notice before plaintiffs' initial complaint was filed, and did not argue before the trial court that the notices were deficient, even in response to plaintiffs' assertion in their response to the motions to dismiss that "the Defendants are not, for the purposes of these Motions, contesting that the Plaintiffs complied with the requirements of Section 121 in connection with the filing of their initial [c]omplaint." Issues raised for the first time on appeal are generally held to be waived. *Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996). We hold that defendants have waived this issue.

claim to each health care provider that will be a named defendant *at least sixty (60) days before the filing of a complaint* based upon health care liability." (Emphasis added.) Plaintiffs, who are "persons asserting a potential claim for health care liability," provided "written notice of the[ir] potential claim" more than sixty days before May 4, 2012, the date on which they filed their second complaint. The second complaint asserted the identical cause of action alleged against the same defendants in the first complaint.

Defendants argue that they "technically" did not receive notice of the plaintiffs' potential claims because plaintiffs' "original cause of action ceased to exist when the trial court granted [their] voluntary nonsuit" and their second complaint "instituted a new and independent action." *Myers*, 382 S.W.3d at 309. *Myers* observed that a lawsuit is concluded and terminated with a voluntary nonsuit, and that the re-filing under the saving statute starts a "new" lawsuit. *Id.*; *see also* *Childs*, 2012 WL 3201933 at *6; *Robles v. Vanderbilt Univ. Med. Ctr.*, No. M2010-01771-COA-R3-CV, 2011 WL 1532069 at *3 (Tenn. Ct. App. M.S., filed Apr. 19, 2011); *Barnett v. Elite Sports Med.*, M2010-00619-COA-R3-CV, 2010 WL 5289669, at *2 (Tenn. Ct. App. M.S., filed Dec. 17, 2010). Our holding today is not at odds with the Supreme Court's holding in *Myers* and the other cited cases. The Supreme Court stated in *Myers* that "[t]he essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed." 382 S.W.3d at 309. Thus, the fact that Plaintiffs' voluntary nonsuit ended the first lawsuit and their re-filing under the saving statute started a new one begs the fundamental and dispositive question: were the defendants given notice of this health care liability action before the second complaint was filed? The answer is clearly "yes." The clear and unambiguous language of section 121, as parsed above, supports this conclusion. The plaintiffs here did not attempt, in their second complaint, to assert different or additional causes of action, nor did they add new defendants – ones that did not receive notice prior to the first complaint. We again stress that the parties and the causes of action in the two complaints are identical. We hold that, under the undisputed facts, plaintiffs complied with the notice requirement of Tenn. Code Ann. § 29-26-121 by providing written notice to the potential defendants of the plaintiffs' potential claim for health care liability – as brought to fruition in the second complaint – more than sixty days before they filed their second action.

The trial court, while stating that the language of section 121 is clear and unambiguous, reached the following additional conclusion about that section:

> The Court concludes as a matter of law that the language of Section 121, which is plain and unambiguous, requires a plaintiff, when re-filing a medical malpractice cause of action after a voluntary non-suit without prejudice and during the saving[] period established pursuant to the Saving[] Statute . . .

to comply separately (*i.e.*, by disregarding the plaintiff's prior compliance with the notice requirement of Section 121 with respect to the filing of the plaintiff's initial complaint) by re-sending notices in conformity with Section 121 to each health care provider who will be named as a defendant in the re-filed action at least sixty (60) days before re-filing the complaint.

We have carefully read section 121(a)(1). With all due respect to the learned trial court, we find nothing in the statutory language to support the trial court's latter conclusion. The language of that section simply does not say that – if you give the requisite notice, file a lawsuit, and then take a non-suit – you must give the same defendants regarding the same cause of action a new, timely section 121 notice before you file your saving statute lawsuit. We again copy section 121 (a)(1) for comparison purposes:

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

The trial court would have us hold that a section 121 notice only applies to the first lawsuit filed after the notice is given. This we cannot do for one very simple reason: this is not what section 121 says.[5] Looking only at the words used in this clear and unambiguous statute, there is no support for the trial court's conclusion.

B.

Defendants argue that plaintiffs' inadvertent failure to file proof of service with their second complaint as required by section 121 is fatal to their cause of action and requires dismissal with prejudice. Tenn. Code Ann. § 29-26-121 provides:

> (3) The requirement of service of written notice prior to suit is deemed satisfied if, within the statutes of limitations and statutes of repose applicable to the provider, one of the following occurs,

---

[5]We find it interesting that 121(a) uses the language "before the filing of *a* complaint" rather than "before the filing of *the* complaint." (Emphasis added.) The use of "a" rather than "the" bolsters our conclusion that a single section 121 notice can support more than one complaint filing.

as established by the specified proof of service, which shall be filed with the complaint:

* * *

(b) If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). *The court may require additional evidence of compliance to determine if the provisions of this section have been met.* The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(Emphasis added.)

Plaintiffs' second complaint alleged in paragraph 18 that they "ha[d] complied with the notice requirements set forth in [section 121] and copies of the required notices and appurtenant documentation, as attested to by the [a]ffidavit of Brandy K. Brogdon, are attached hereto." The affidavit and notices were not attached to the complaint, however. In their response to defendants' motions to dismiss, plaintiffs stated:

Plaintiffs acknowledge that they are required to attach copies of the relevant notices and supporting documentation to their Complaint filed under the Savings Statute; the language in paragraph 18 of the Plaintiffs' Complaint itself demonstrates that this was the Plaintiffs' intention. However, this inadvertent failure to supply the notices together with the Complaint does not constitute a failure to comply with Section 121 that warrants dismissal. In this respect, the Plaintiffs respectfully submit that it is necessary to distinguish between the primary purpose of Section 121 in ensuring that notice is given in the manner specified in that section and the ancillary evidentiary purpose of filing such notices and their supporting documentation with the Complaint.

Plaintiffs attached copies of the notices sent to defendants and Ms. Brogdon's affidavit to their response to the motions to dismiss.

The ***Myers*** Court addressed the issue of the consequences of noncompliance with sections 121 and 122 as follows:

> Tennessee Code Annotated sections 29-26-121 and 122 were both enacted as Public Chapter No. 919 of the Public Acts of 2008 and were amended as Public Chapter 425 of the Public Acts of 2009; when statutes are enacted at the same legislative session, as occurred with regard to these two statutes, the rule of in pari materia "is of peculiar force. . . ." ***Hill v. Roberts***, 142 Tenn. 215, 217 S.W. 826, 828 (1920). **The legislature expressly provided the consequence of a plaintiff's failure to file the required certificate of good faith with the complaint in Tennessee Code Annotated section 29-26-122**, stating that "*the complaint shall be dismissed, as provided in subsection (c)*, absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause." Tenn. Code Ann. § 29-26-122(a) (emphasis added). Subsection (c) of the statute provides that "[t]he failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action *subject to dismissal with prejudice*." ***Id.*** at § 29-26-122(c) (emphasis added). . . .
>
> **Regarding Tennessee Code Annotated section 29-26-121, the legislature did not expressly provide for the consequence of dismissal with prejudice as it did in Tennessee Code Annotated section 29-26-122**. However, because we are dismissing Mr. Myers's complaint with prejudice as the result of his failure to comply with Tennessee Code Annotated section 29-26-122, we need not address the appropriate sanction for his failure to comply with section 29-26-121.

***Myers***, 382 S.W.3d at 311-12 (bold lettering added for emphasis to differentiate from italicized emphasis in original.) Unlike the plaintiff in ***Myers***, plaintiffs in this case complied with section 122's certificate of good faith requirement.

Although ***Myers*** found it unnecessary to explicitly address the consequence of noncompliance with section 121, the import of the Supreme Court's analysis seems clear. If the legislature intended to require the draconian remedy of dismissal with prejudice for

-10-

noncompliance with section 121, then it would have said so, just as it did with respect to section 122, which was enacted at the same time and which addresses the same general subject matter. We conclude that section 121 does not *require* a court to dismiss a complaint with prejudice for noncompliance with the notice requirement of that section. This conclusion is in keeping with the general principle that "Tennessee law strongly favors the resolution of all disputes on their merits." **Henley v. Cobb**, 916 S.W.2d 915, 916 (Tenn. 1996); *see also* **Hinkle v. Kindred Hosp.**, No. M2010-02499-COA-R3-CV, 2012 WL 3799215 at *7, *15 (Tenn. Ct. App. M.S., filed Aug. 31, 2012) (declining to "conclude that any deviation from the strict letter of Tenn. Code Ann. § 29-26-121, no matter how small, would compel the courts to dismiss any medical malpractice claim asserted, no matter how meritorious" and observing that "[t]he hospital received actual notice. It seems to us that the technical requirements in the statute are intended to provide just that: notice of the claim."). The language of section 121(b) providing that "[t]he court may require additional evidence of compliance to determine if the provisions of this section have been met" also supports the conclusion that automatic dismissal with prejudice is not required when a plaintiff neglects to attach proof of service to his or her complaint. In such an instance, the statute contemplates a hearing so the court may consider "additional evidence of compliance" rather than outright dismissal. Under the circumstances presented here, where plaintiffs provided sufficient notice under the statute and inadvertently failed to include – with the second complaint – copies of the notice provided to the defendants, there is no reason why the court should not allow plaintiffs to rectify their oversight by filing the required proof late.

We are mindful of the fact that section 121(b) provides that "the pleadings . . . *shall* provide the documentation specified in subdivision (a)(2)." (Emphasis added.) We are also aware that the word "shall" in a statute often indicates a mandatory requirement, *see* **Bellamy v. Cracker Barrel Old Country Store, Inc.**, 302 S.W.3d 278, 281 (Tenn. 2009), but this interpretation is not always required. The Supreme Court in **Myers**, noted that whether the word "shall" is interpreted to be mandatory or simply directory depends upon "whether the prescribed mode of action is of the essence of the thing to be accomplished." **Myers**, 382 S.W.3d at 309. Here "the essence of the thing to be accomplished" is the giving of the notice, not the attaching of evidence of same to the complaint. Under these circumstances, we hold that the provision in section 121(b) under discussion, is directory and not mandatory. Thus, the use of the word "shall" in section 121(b) is not inconsistent with our holding that dismissal is not required by the statute for noncompliance.

V.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellees, Walter William Chiles, III, M.D., Knoxville Urology Clinic, P.C., Gordon Lee Collins, M.D., Anesthesia Medical Alliance of East Tennessee, P.C., Covenant Health, and Parkwest

Medical Center.  This case is remanded to the trial court for further proceedings, consistent with this opinion.


_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE