# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
February 5, 2014 Session

## RHONDA POTTER, ET. AL. V. WILLIAM DALE PERRIGAN, M. D., ET. AL.

### Appeal from the Circuit Court for Cumberland County
### No. CV005289    Hon. Amy V. Hollars, Judge

---

### No. E2013-01442-COA-R3-CV-FILED-MARCH 27, 2014

---

This is a medical malpractice[1] action.  Plaintiffs timely filed a complaint after properly sending pre-suit notices to Defendants.  After voluntarily dismissing the initial complaint, Plaintiffs filed a second complaint pursuant to the saving statute with an attached certificate of good faith and a copy of the original pre-suit notices.  Defendants moved to dismiss the second complaint for failure to comply with the notice requirements set out in Tennessee Code Annotated section 29-26-121(a).  The trial court agreed and dismissed the action.  Plaintiffs appeal.  We reverse the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Mark N. Foster and Allison M. Kirk, Rockwood, Tennessee, for the appellants, Rhonda Potter and George Wiley Potter, II.

P. Alexander Vogel, Knoxville, Tennessee, for the intervening appellant, Blue Cross Blue Shield of Tennessee.

---

[1]Tennessee Code Annotated section 29-26-101 now defines most all cases occurring in a medical context as "health care liability actions."  The statute specifies that such an action "means any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability, on which the action is based."  *See* Acts 2011, ch. 510, § 8.  Effective April 23, 2012, the term "health care liability" replaced "medical malpractice" in the Code.  *See* Acts 2012, ch. 798.  The provisions of the revised statute do not apply to this action.

Daniel H. Rader, III and Daniel H. Rader, IV, Cookeville, Tennessee, for the appellees, Michael Dale Perrigan, M.D. and Crossville Gynecology Associates, P.C.

**OPINION**

**I. BACKGROUND**

On January 14, 2008, Rhonda Potter was scheduled to undergo surgery at the Cumberland Medical Center in Crossville, Tennessee. The surgery was intended to involve the administration of anesthesia, followed by Michael Dale Perrigan, M.D. surgically removing her ovaries and two cysts and performing a rectocele repair. Prior to surgery, Ms. Potter inquired as to whether she should ingest "colon-emptying products." Ms. Potter was advised against ingesting any such products. During the surgery, Dr. Perrigan perforated Ms. Potter's bowel, causing further complications that developed into generalized peritonitis. Ms. Potter survived after undergoing additional surgery to repair the tear.

Ms. Potter and George Wiley Potter, II (collectively "Plaintiffs") have filed two complaints against Dr. Perrigan and his practice, Crossville Gynecology Associates, P.C. (collectively "Defendants") in their attempt to recover for Ms. Potter's injuries. In each complaint, Plaintiffs alleged that Dr. Perrigan was negligent in caring for Ms. Potter and that his negligence resulted in subsequent injuries and prolonged medical care.

On January 8, 2009, prior to filing their first complaint ("Lawsuit 1"), Plaintiffs provided the statutorily required 60-day pre-suit notice pursuant to the Tennessee Medical Malpractice Act ("TMMA"). Plaintiffs then filed Lawsuit 1 on April 8, 2009. During the pendency of the action, the General Assembly enacted statutory changes to the TMMA, setting forth new requirements for medical malpractice actions filed on or after July 1, 2009. Tenn. Code Ann. §§ 29-26-121(a), -122. Plaintiffs voluntarily dismissed Lawsuit 1 on September 8, 2009, before ever having filed a certificate of good faith.[2]

On September 8, 2010, Plaintiffs filed the second complaint ("Lawsuit 2") with an attached certificate of good faith but failed to provide a new 60-day pre-suit notice. Instead, Plaintiffs attached a copy of the previously filed 60-day pre-suit notice to Lawsuit 2. Defendants sought the dismissal of Lawsuit 2, alleging, in pertinent part, that Plaintiffs had failed to comply with the notice requirements set out in section 29-26-121 by neglecting to file a new pre-suit notice. The trial court agreed and dismissed Lawsuit 2. Plaintiffs appeal.

---

[2]The parties agreed to extend the time for filing of the certificate of good faith to September 7, 2009, which was recognized as a state holiday.

## II. ISSUE

We consolidate and restate the issues raised on appeal by Plaintiffs as follows:

Whether the failure to send new pre-suit notices prior to filing the second complaint mandates dismissal of the action in this case pursuant to Tennessee Code Annotated section 29-26-121(a).

## III. STANDARD OF REVIEW

In this action, Defendants properly filed a motion to dismiss. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012) ("The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss."). In *Myers*, the Court further provided as follows:

> In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance.

*Id.* The trial court's grant of the motion to dismiss is subject to a de novo review with no presumption of correctness because we are reviewing the trial court's legal conclusion. *Blackburn v. Blackburn,* 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

"The question of whether [plaintiff] has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Myers*, 382 S.W.3d at 307-08 (citing *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011)). This court reviews a "trial court's decision to excuse compliance under an abuse of discretion standard." *Id.* at 308. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard

or reach[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

This appeal also involves the interpretation of statutes. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C .K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

## IV. DISCUSSION

Plaintiffs assert that the trial court erred in dismissing Lawsuit 2 because the 2009 notice fulfilled the requirements of Tennessee Code Annotated section 29-26-121. They alternatively assert that even if they failed to comply with section 29-26-121, dismissal of their claim was not mandatory. Defendants respond that the 2009 notice was ineffective for purposes of Lawsuit 2 because Lawsuit 2 is a new action that required its own pre-suit notice. They alternatively assert that the 2009 notice was deficient in that it failed to substantially comply with the revised provisions of the TMMA. Plaintiffs respond that the 2009 notice was compliant with the law in effect at that time.

In *Foster v. Chiles*, No. E2012-01780-COA-R3-CV, 2013 WL 3306594, at *6 (Tenn. Ct. App. June 27, 2013), *perm. app. granted* (Tenn. Nov. 13, 2013), a panel of this court was faced with essentially the same dilemma. In *Foster*, the plaintiffs filed the proper pre-suit notices before filing their initial complaint. 2013 WL 3306594, at *1. The plaintiffs voluntarily dismissed their initial suit and then filed a second complaint without filing the proper pre-suit notices or attaching copies of the prior notices to the second complaint. *Id.* In declining to affirm the dismissal of the second complaint for failure to comply with section 29-26-121, this court stated,

> As noted, section 121(a)(1) simply requires that "[a]ny person . . . asserting a potential claim for health care liability shall give written notice of the potential

claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability." (Emphasis added.) Plaintiffs, who are "persons asserting a potential claim for health care liability," provided "written notice of the[ir] potential claim" more than sixty days before May 4, 2012, the date on which they filed their second complaint. The second complaint asserted the identical cause of action alleged against the same defendants in the first complaint.

Defendants argue that they "technically" did not receive notice of the plaintiffs' potential claims because plaintiffs' "original cause of action ceased to exist when the trial court granted [their] voluntary nonsuit" and their second complaint "instituted a new and independent action." *Myers*, 382 S.W.3d at 309. *Myers* observed that a lawsuit is concluded and terminated with a voluntary nonsuit, and that the re-filing under the saving statute starts a "new" lawsuit. *Id.*; *see also Childs*, 398 S.W.3d 163, 2012 WL 3201933 at *6; *Robles v. Vanderbilt Univ. Med. Ctr.*, No. M2010-01771-COA-R3-CV, 2011 WL 1532069 at *3 (Tenn. Ct. App. Apr. 19, 2011); *Barnett v. Elite Sports Med.*, M2010-00619-COA-R3-CV, 2010 WL 5289669, at *2 (Tenn. Ct. App. Dec. 17, 2010). Our holding today is not at odds with the Supreme Court's holding in *Myers* and the other cited cases. The Supreme Court stated in *Myers* that "[t]he essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed." 382 S.W.3d at 309. Thus, the fact that Plaintiffs' voluntary nonsuit ended the first lawsuit and their re-filing under the saving statute started a new one begs the fundamental and dispositive question: were the defendants given notice of this health care liability action before the second complaint was filed? The answer is clearly "yes." The clear and unambiguous language of section 121, as parsed above, supports this conclusion. The plaintiffs here did not attempt, in their second complaint, to assert different or additional causes of action, nor did they add new defendants – ones that did not receive notice prior to the first complaint. We again stress that the parties and the causes of action in the two complaints are identical. We hold that, under the undisputed facts, plaintiffs complied with the notice requirement of Tenn. Code Ann. § 29-26-121 by providing written notice to the potential defendants of the plaintiffs' potential claim for health care liability – as brought to fruition in the second complaint – more than sixty days before they filed their second action.

*Foster*, 2013 WL 3306594, at *4-5.

Like the scenario presented in *Foster*, Plaintiffs filed the requisite 60-day pre-suit notice prior to filing Lawsuit 1, while Lawsuit 2 asserted the same cause of action against the same defendants. We hold that under the undisputed facts, Plaintiffs fulfilled the notice requirement in accordance with this court's holding in *Foster*. In so holding, we must address the assertion that the notice was not compliant with the 2009 revisions to the TMMA, in effect at the time of the filing of Lawsuit 2. Chapter 425 of the Public Acts of 2009 at section 4, provides,

> Section 1 of this act shall take effect and apply to notice given on or after July 1, 2009, in all medical malpractice actions, the public welfare requiring it. Section 2 of this act shall take effect on July 1, 2009, and shall apply only to those actions in which the required notice is given on or after July 1, 2009, pursuant to Section 1, the public welfare requiring it. In the event that notice is successfully given more than once to a provider, the effect of the notice is determined by the law in effect on the date of the first successful notice.

The 2009 revisions to the TMMA do not apply in this case because notice was given prior to July 1, 2009. Our review of the notice and the pertinent law reflects that Plaintiffs were compliant with the notice provisions in effect at the time of the filing of the first and only successful notice. *See generally Stevens v. Hickman Community Health Care, Inc.*, – S.W.3d –, 2013 WL 6158000 (Tenn. Nov. 25, 2013) (requiring substantial compliance with the content requirements of the notice provisions). With these considerations in mind, we reverse the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed equally to the appellees, Michael Dale Perrigan, M.D. and Crossville Gynecology Associates, P.C.

_____
JOHN W. McCLARTY, JUDGE